# Kraft, Appellant, *v.* Neuffer.

*Trusts and trustees—Voluntary deed of trust—Revocation.*

In the absence of exceptional circumstances a voluntary deed of trust containing no power of revocation, and reserving a life interest in the land to the settlor and his wife during their joint lives, and with remainder over to other persons, is irrevocable.

Argued Feb. 26, 1902. Appeal, No. 34, Jan. T., 1902, by plaintiff, from decree of C. P. Lackawanna Co., Sept. T., 1901, No. 12, dismissing bill in equity in case of Elizabeth Kraft v. Charles D. Neuffer and Minnie Meyers. Before McCOL-LUM, C. J., MITCHELL, DEAN, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for an injunction to restrain a trustee from selling land.

EDWARDS, P. J., filed the following opinion :

We find the following facts :

1. For some time previous to October 21, 1878, William Meyer was the owner of certain real estate in the city of Scranton, being lot 2, in block 48, situate on the corner of Jefferson avenue and Linden street, and improved with dwelling houses occupied by the said William Meyer and Frederika, his wife, and by other tenants. This property appears to be the only real estate he owned. On the date last mentioned William Meyer and his wife executed a deed conveying the said property to Philip Doersam and John Lutz, their heirs and assigns forever. " In trust, nevertheless, for the following use and purpose, to wit : To the use and enjoyment of the said William Meyer and Frederika, his wife, for and during the term of their natural lives, and the life of the survivor of them without charge for rental, or impeachment of waste, and thereupon, that is to say, upon the death of the said William Meyer and Frederika, his wife, or of the survivor of them, then and thereupon the said Philip Doersam and John Lutz, or their successors, heirs or assigns, or the survivor of them, shall, as soon as may be done, expose the real estate hereby conveyed to them, to public sale, or private sale, in such manner as shall cause it to produce the largest sum or price, and after said real estate shall have been converted into money as aforesaid, the said trustees, after deducting therefrom all legal expenses and their just charges, shall divide the said money or proceeds of said real estate between Joseph A. Meyers and Elizabeth Kraft (stepson and daughter of the said William Meyer) in manner following, to wit : Said proceeds of sale shall be divided into two unequal parts, the larger of which shall contain $1,500 more than the smaller sum.

The smaller of these sums acquired as above shall be imme-
diately paid to the said Joseph A. Meyer.  But the larger part
as aforesaid shall be retained in trust for said Elizabeth Kraft
until after the death of her husband, then the whole sum to be
paid to her immediately.  The trustees aforesaid shall, never-
theless, pay to the said Elizabeth Kraft annually all legal in-
terest accruing upon said sum.  But in case either said Eliza-
beth or said Joseph should die before said distribution without
any legal heirs, then the whole amount shall be paid to the other
party then living."

2. It does not appear that the trustees, Philip Doersam and
John Lutz, exercised any supervision over the property from
1878 to 1888.  On December 20, 1888, the two trustees filed
their petitions in the court of common pleas, asking to be dis-
charged from their trust.  The court ordered the petition to be
filed, and granted a rule on William Meyer and Frederika Meyer
and on Joseph A. Meyer and Elizabeth Kraft (the last two
named persons being the beneficiaries under the deed of trust),
commanding them to appear in court on a day certain, to show
cause why the trustees should not be discharged.  William
Meyer and his wife consulted an attorney, Mr. Gearhart, in re-
gard to the matter, and on their behalf he filed an answer ad-
mitting the facts set forth in the petition, joining with the trus-
tees in their request for their discharge, and requesting the court
to appoint Charles Neuffer as trustee to carry out the terms of
the trust deed.  Thereupon, on January 9, 1889, the court, by
order, discharged Doersam and Lutz as trustees and appointed
Charles D. Neuffer in their place.

3. The relation of the new trustee to the Meyer property was
of a more active character than that of the old trustees.  With
the consent of William Meyer and his wife, Neuffer proceeded
to take charge of the property.  He collected the rents, paid
the bills for repairs and taxes, and rendered a statement every
month, with check for the balance in his hands.  He continued
to do this until the death of Mr. and Mrs. Meyer, and was exer-
cising the same kind of supervision of the property at the time
of the trial.  In February, 1896, the trustee petitioned the court
for leave to borrow $1,300 for the purpose of paying the charges
against the trust property for pavement.  William Meyer knew
of this application, because he joined in the petition designat-

ing himself "the grantor in said deed (of trust) and cestui que trust." The effect of this evidence is to show the continued recognition of the trust and trustee by William Meyer four years after the death of his wife.

4. On June 7, 1899, William Meyer executed a deed specifically revoking the trust deed of October 21, 1878, and giving therein his reasons for so doing. On June 9, 1899, he made his will, devising all his property, making express mention of the Jefferson avenue property, to his daughter, Elizabeth Kraft. June 18, 1899, William Meyer died. His death occurred eleven days after the date of the deed of revocation, and nine days after the execution of the will. He had been in ill health for several years. There is no evidence as to his exact condition on June 7 and 9, 1899.

5. Joseph A. Meyer, one of the beneficiaries named in the original deed of trust, was married to Minnie Schriefer in 1881. A daughter was born to them in 1882. The father, Joseph A. Meyer, died intestate in 1888, and his only child, Minnie Isabel Meyer, died in 1889, leaving to survive her, her mother, one of the defendants in this case.

### CONCLUSIONS OF LAW.

1. It is a general rule of law that the title of beneficiaries under a deed of trust is complete, and irrevocable by the settlor, although the transaction be purely voluntary. Nor does the fact that the grantor reserved an interest during life in the proceeds of the property and gave a future benefit to other persons named, give an implied right of revocation. It contravenes no rule or policy of law, but executes the intention of the grantor.

2. There is a class of cases which constitutes an exception to the general rule. Equity, because of exceptional facts in rare cases has revoked the trust, or held it revocable by the grantor, because plainly a testamentary instrument, but the general rule has remained the same. Cases notably in this class are Turner v. Scott, 51 Pa. 126, Frederick's Appeal, 52 Pa. 338, and Rick's Appeal, 105 Pa. 528. The exceptional facts may be found in the conveyance itself or in other facts surrounding the transaction.

3. The deed dated October 21, 1878, from William Meyer and his wife to Philip Doersam and John Lutz, trustees, for the

benefit of Elizabeth Kraft and Joseph A. Meyer, was irrevocable and could not be afterwards changed, altered, modified or revoked by the grantors, or either of them.

4. The will of William Meyer, so far as it relates to the Jefferson avenue property, is void and of no effect.

5. The bill of complaint in this case should be dismissed.

### DISCUSSION.

It is proper that we should state briefly the reasons which have induced us to declare the deed of trust of October 21, 1878, valid and irrevocable.

1. It contains no clause reserving to the grantor the power of revocation.

2. The conveyance was more than an arrangement for the convenience of the grantor, William Meyer. The character of the estate, so far as it concerned Meyer and his wife, was changed into a species of an estate in entirety, the enjoyment of the whole estate during life being in both and afterwards in the survivor. It is true the wife died first, but this fact does not change the nature of her estate as fixed by the deed of trust.

3. The instrument is complete in form and conveys the whole estate to the trustees.

4. The disposition made of the real estate was in no wise improvident. The grantor and his wife had the enjoyment of the whole estate during their lifetime.

5. The conveyance was a voluntary one. There is no suggestion of undue influence or persuasion on the part of any one, nor of feebleness in the grantor.

6. The conduct of the grantor and his wife is consistent only with a continued recognition of the trust. At the end of ten years they assent to the substitution of a new trustee, thus by their acts recognizing and affirming the trust arrangement. The new trustee proceeds to manage the property, makes monthly settlements with William Meyer and his wife, and continues his active supervision to the time of Meyer's death. During this period of twenty years there is no hint of a desire to revoke the deed of trust.

7. The deed of revocation and the will made two days later come before us, to say the least, under suspicious circumstances. These instruments, executed a few days before William Meyer's

death and while he was in a condition of feebleness and extreme ill health, should not be allowed to overturn a trust which had existed and had been recognized by the settlor for such a long period of time.

The foregoing are the considerations which have induced us to uphold the trust deed of 1878. We cannot avoid the conclusion, on a fair consideration of all the facts, that the intention of William Meyer and his wife was to make an irrevocable disposition of the Jefferson avenue property.

We do not think it necessary to make an extensive citation of authorities. Many of the cases are reviewed in Wilson v. Anderson, 186 Pa. 531. In this case Frederick's Appeal is referred to as well as other cases. We can do no better than quote from Justice DEAN's opinion in Wilson v. Anderson, supra : " The case relied on by the appellant as determining that this deed should be construed a will (Frederick's Appeal, 52 Pa. 338,) does not by any means hold that a deed of trust reserving to the grantor the income of the trust estate for life, and postponing until his death the enjoyment by the beneficiaries of the principal, is necessarily testamentary without regard to the manifest intent of the grantor. The decision in that case proceeds wholly upon an ascertainment of the intention of the testator from the instrument itself. After a careful analysis of the expressed purpose, in view of the surroundings, and the fact that during his lifetime the grantor had by a second formal deed revoked the first, a subsequent testamentary deposition was sustained. The deed was not made to preserve the estate of the grantor from depletion by vicious habits; from his express language, it was made for his own convenience merely. He was old and feeble, and, in the preamble to the deed declares that it is made to exempt him from the vexation of management and sales of his property to pay debts ; therefore, he appoints three trustees, who are to make sales of his land, apply the money received to his debts, account to him annually, and any balance remaining in their hands is to be securely invested ; the grantor to be maintained therefrom during his life, and any balance remaining at his death to be divided equally among his children. The deed was not intended by the grantor to be irrevocable; that there would be any estate for the children at the grantor's death was altogether uncertain, for that depended

on the value of the estate, amount of his debts, the expenses of administration and the cost of his support during the remainder of his life.

"Chief Justice WOODWARD, who rendered the opinion, expressly says he declines to consider the authorities bearing on the subject of voluntary trusts, because the deed was made for the grantor's personal convenience merely, and therefore revocable. He follows this with the remark that ' a disposition of property to take effect after the grantor's death, is testamentary, and therefore revocable ; ' but this was unnecessary in the disposition of the case, for it was the very subject, that is, whether it was a testamentary disposition of the property, or an irrevocable trust deed, which he had declined to discuss or consider in the former part of his opinion. A careful reading of the opinion will show, that the judgment was based on the fact that the deed was made wholly for the convenience of the grantor, in that it relieved him from the management of his estate. Besides, there was nothing in the deed itself, or in the circumstances attending its execution, manifesting an intention that it should be irrevocable. On its peculiar facts that case stands by itself; it is not authority, as argued by appellant, for the sweeping proposition that every voluntary trust conveyance of property which reserves to the grantor a life interest, with a direction to convey to others the principal of the estate at his death, is a testamentary instrument, and therefore revocable by a subsequent will.

"In Rick's Appeal, 105 Pa. 528, also cited by appellant, the decision is rested on the ground that the deed was obtained by undue solicitation from an aged woman on the part of the beneficiary, and was actually improvident. In Rife's Appeal, 110 Pa. 232, also cited by appellant, the intent of the testator that the instrument, in form a deed, should constitute his will in case he made none other, is manifested by his language in the deed. The decision in Chestnut Street National Bank v. Fidelity Ins. Trust & Safe Deposit Co., 186 Pa. 333, is put upon the ground that testatrix intended the instrument to be revocable, and, if she had been advised of its importance, would have inserted a power of revocation."

As an authoritative declaration of the effect to be given to Frederick's Appeal, Justice DEAN further says : "We do not

favor an extension of the doctrine of Frederick's Appeal, an exceptional case, to cases not clearly within it on their facts." We may find also a comprehensive statement of the law in Potter v. Fidelity Ins. Trust & Safe Deposit Co., 199 Pa. 360. Justice FELL writes : " Generally the cases in which voluntary settlements have been set aside have been where there have been fraud or imposition in their procurement; where the design had been to give the settlor full enjoyment of his property for life, with power of testamentary disposition, and at the same time to protect it from his creditors ; where the instrument was in itself or in connection with other instruments testamentary in character ; where the intention to make the instrument revocable clearly appeared; where the purpose of the settlement had failed ; or where the trust created was merely a naked one.   The rule is that a voluntary settlement will be sustained and enforced in favor of the beneficiaries, unless it is shown that it was procured by fraud or imposition, or executed under misapprehension of the facts or of the law."

Now, January 28, 1902, this cause came on to be heard at a regular term of equity court, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as follows, to wit: The bill of complaint is dismissed at the costs of the plaintiff.

*Error assigned* was decree dismissing bill.

*H. M. Hannah*, with him *S. B. Price*, for appellant.

*Everett Warren*, *James H. Torrey* and *Joseph O'Brien*, for appellee.

PER CURIAM, May 19, 1902 :
The decree in this case is affirmed on Judge EDWARDS's opinion.