Potter, Appellant, *v*. Fidelity Insurance Trust and Safe Deposit Company (No. 1).

*Trusts and trustees—Voluntary trust—Irrevocable trust.*

Where a voluntary trust is an active one, and by its express terms irrevocable, and there has been no failure of the purpose of the trust, and it is not shown that the deed was procured by fraud or imposition, or executed under a misapprehension of the facts or of the law, the settlement will be sustained and enforced in favor of the beneficiaries.

Argued April 3, 1901. Appeal, No. 230, Jan. T., 1901, by plaintiff, from decree of C. P. No. 4, Phila. Co., June T., 1899, No. 788, dismissing bill in equity in case of George Van Hook Potter v. The Fidelity Insurance Trust & Safe Deposit Company. Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity to revoke a voluntary deed of trust.

Audenried, J., stated the facts to be as follows:

The following facts were developed at the trial: During the plaintiff's minority the defendants had been guardians of his estate. He came of age April 17, 1895, while still at college.

Shortly before this date Mr. Wright, now deceased, then vice-president of the defendant corporation, suggested to the plaintiff's mother, a widow, that it was advisable that her son should, on attaining his majority, turn over to the defendants the money coming to him in trust, to hold it for him so that he might be protected from the results of extravagance and indiscretion. This recommendation was laid before the plaintiff himself, but Mr. Wright advised him to defer action on the matter until he should get back to Philadelphia, at the end of his college year. On his return home in June, 1895, the plaintiff saw Mr. Wright, discussed the subject of the proposed settlement, and learned from him that his mother approved of the step. In conversation with the plaintiff, soon afterwards, Mrs. Potter confirmed what Mr. Wright had told the plaintiff as to her views on this subject. The plaintiff then laid the matter before Mr. John M. Gest, who, as attorney, had represented his mother and the defendants as his guardians, and retained him to prepare the deed of settlement. Throughout the whole transaction the plaintiff acted under Mr. Gest's advice. The latter's testimony as to the nature of that advice was taken at the trial against the objection of the plaintiff, based on the ground that as a communication between attorney and client it was privileged. While authorities are not wanting to sustain the admission of this evidence, under the circumstances of the case, it seems safer to exclude it under the general rule. What was said by Mr. Gest as to what passed between the plaintiff and himself in this matter is, therefore, stricken from the notes of testimony. It has not been relied on or even considered in deciding the case. From the testimony of the plaintiff himself, however, it appears that prior to the execution of the deed of trust Mr. Gest went over the details of the matter with him, explaining that the settlement would be irrevocable as to all of the property assigned except so far as made revocable by its express terms. Acting under his advice the plaintiff, on June 26, 1895, executed and delivered to the defendant a deed whereby, for a nominal consideration, he transferred to them money, bonds and mortgages that were received by him from them as his guardians, to the amount of about $75,000, in trust to invest and reinvest; in trust to collect the income and pay the same to him by quarterly instalments for life, so that the same should

not be assigned or anticipated, nor be subject to or liable for his debts, and without liability to execution or legal process of any kind; and in trust on his death, to pay the principal to such persons as he might by will appoint, and in default of appointment, to his issue then living, or failing issue, to Marie E. Potter and Blanche Van Hook Potter in equal shares. By this deed the plaintiff, with respect to the sum of $12,000, reserved the right by writing under his hand and seal, to alter and revoke the trusts thereby declared; but expressly declared that, except as to that sum, the trust thereby created should be irrevocable. The trust thus imposed was duly accepted by the defendants. As to the sum of $12,000, the plaintiff has exercised his power of revocation, and the last of that money was paid him by his trustee July 15, 1897. By deed poll bearing date June 9, 1899, the plaintiff has attempted to revoke and annul the deed of trust above mentioned.

A voluntary settlement may be revoked by the settlor where there appears no deliberate intent on his part that it shall be irrevocable and no motive for the settlement exists. But where his intent to make an irrevocable disposition of his property is perfectly apparent, the settlement cannot be disturbed. The silence of a deed of settlement on the subject of revocation, does not necessarily imply a power to revoke. The absence of such a power is merely prima facie evidence of mistake on the part of the settlor, and its greatest possible effect is to cast on him who would sustain the trust the burden of proving that the settlor intended that it should be irrevocable. The question of the right to revoke a voluntary trust resolves itself into a question of intention, and the proper subject for inquiry in this, as in every case, is, did the settlor, when he executed the deed, deliberately intend that his settlement should be revocable, or not?

The answer to that question is found here in the deed itself. It is not silent on the subject. As to part of the trust fund, it expressly reserves to the plaintiff the power to revoke. From this alone would spring an inference that the plaintiff intended, as to the residue of the fund, the settlement should not be subject to revocation. But the deed does not stop with this. We are not left to inference. The clause next preceding its formal conclusion reads, "It being expressly agreed that except as to

such sum the trust hereby created shall be irrevocable." The bill avers that the defendant's vice-president, Mr. Wright, represented to the plaintiff that this was employed merely as a convenient means of leaving the care of his property in their hands for the time being, and was revocable at his pleasure; and that upon this assurance he " signed the deed without advice or reflection."

The plaintiff's testimony on this point is: " He (Mr. Wright) said that, whereas this deed read to be irrevocable, I could get the money; the probabilities were, if I went to the Fidelity Company, and asked them to give it to me, they would hand it over; if not, I could get it by going through the proceedings that we are doing now." Laying aside our doubt that the plaintiff's recollection as to what Mr. Wright said on this point is to be relied on, and passing, too, the fact that the remarks detailed seemed to deal with " probabilities " and prediction, Mr. Wright's alleged interpretation of this deed was not one which the plaintiff had the right to accept or act on. In the sense ascribed to it, that interpretation was contrary to the plain meaning of the instrument. What it meant anybody could understand—human language could not be clearer. Even a college man must be held for the knowledge of the signification of words of ordinary use. Then, too, by the testimony of the plaintiff himself, this deed was prepared by his own attorney, after consultation with him; it was explained by that attorney that " it would be irrevocable as to this money, with the exception of the money that was stated in it which I could revoke;" and in executing it, he was acting under his attorney's advice. In all this we can find no evidence of fraud, accident or mistake, nor can we discover any reason why the plaintiff's deed should not be taken as setting forth truly his intentions when it was executed, that the settlement should not be revocable to an extent beyond that therein mentioned.

We are of the opinion, therefore, that this settlement is not and cannot be revoked, and that the bill must be dismissed.

*Error assigned* was decree dismissing the bill.

*Thomas Leaming,* with him *Arthur W. Depue,* and *Charles H. Burr, Jr.,* for appellant.—The only thing in the deed which approaches placing the property beyond his dominion during life,

is the provision that the income shall not be subject to his debts, yet such a provision, in an identical deed, has been by this court declared wholly void against creditors, in Ghormley v. Smith, 139 Pa. 584.

The writing was testamentary in character: Sturgeon v. Stevens, 186 Pa. 350 ; Chestnut Street Nat. Bank v. Fidelity Ins., etc., Co., 186 Pa. 333 ; Frederick's App., 52 Pa. 338 ; Russell's App., 75 Pa. 269 ; Rick's App., 105 Pa. 528.

Cases which apparently conflict with the foregoing will be found to be readily distinguishable.

In Ashhurst's Appeal, 77 Pa. 464, the main question involved was whether the trust was an active or a passive trust, and the argument and decision are based upon that ground.

In Fellows's Appeal, 93 Pa. 470, the settlor was dead, and the court considered the limitations over under the deed of trust as being a carrying out of the testator's intention.

Merriman v. Munson, 134 Pa. 114, was a case where the settlor was admittedly a spendthrift.

Reidy v. Small, 154 Pa. 505, was a case where the settlor was threatened with hereditary insanity.

Edwards v. Edwards, 170 Pa. 212, was a case where the settlor had made a deed to protect his wife.

In Stockett v. Ryan, 176 Pa. 71, the settlor was admittedly intemperate.

*William M. Stewart, Jr.*, for appellee, was not heard, but in his printed brief said : The court has properly found that a voluntary irrevocable gift can be created when the settlor clearly says so in writing : Ashhurst's Appeal, 77 Pa. 464 ; Fellows's Appeal, 93 Pa. 470 ; In re Account of Phila. Trust Co., 13 Phila. 44 ; Solms v. Phila. Trust Co., 16 W. N. C. 80 ; Merriman v. Munson, 134 Pa. 114 ; Reidy v. Small, 154 Pa. 505 ; Edwards v. Edwards, 170 Pa. 212 ; Stockett v. Ryan, 176 Pa. 71 ; Neal v. Black, 177 Pa. 83 ; Patrick v. Bingaman, 2 Pa. Superior Ct. 113 ; Wilson v. Anderson, 186 Pa. 531 ; Rynd v. Baker, 193 Pa. 457.

OPINION BY MR. JUSTICE FELL, May 13, 1901 :

We concur in the conclusions of fact and law reached by the learned judge of the common pleas. There was no evidence of fraud, imposition or mistake, and there is no room for doubt

that the deed when executed expressed the deliberate intention of the settlor.  Although a young man just coming into possession of his estate, he was fully capable of understanding what he did, the reason for it and its effect.  He took ample time after the subject of the creation of a trust was first suggested to him to consider it before acting, and he had the advice of his mother and of his attorney   Clearly there was no misapprehension of facts, nor of the legal effect of the deed.

The trust was an active one, and by its express terms irrevocable, and there has been no failure of the purpose of the settlement.   That such a trust cannot be revoked at the will of the settlor has been uniformly held since the decision in Reese v. Ruth, 13 S. & R. 434, and notably in two quite recent cases in which the subject was fully considered : Wilson v. Anderson, 186 Pa. 531 ; Rynd v. Baker, 193 Pa. 486.   Frederick's Appeal, 52 Pa. 338, has been frequently distinguished and limited in its application, nor was it ever authority for the proposition that a voluntary deed of trust in which the settlor reserved a life interest with the direction to convey the principal to others at his death, is a testamentary instrument : Wilson v. Anderson, supra.   This decision rests on the peculiar facts of the case, and the construction given to the deed, which was that, as to the settlor, it was a mere power of attorney to manage his estate for him, intended for his own convenience, and was revoked by his death ; and that, as to future interests, it was a testamentary disposition and therefore revocable.   Generally the cases in which voluntary settlements have been set aside, have been—where there had been fraud or imposition in their procurement; where the design had been to give the settlor full enjoyment of his property for life, with power of testamentary disposition, and at the same time to protect it from his creditors; where the instrument was in itself or in connection with other instruments testamentary in character ; where the intention to make the instrument revocable clearly appeared ; where the purpose of the settlement had failed ; or where the trust created was merely a naked one.   The rule is that a voluntary settlement will be sustained and enforced in favor of the beneficiaries, unless it is shown that it was procured by fraud or imposition, or executed under a misapprehension of the facts or of the law.   This case is within the rule.

The decree is affirmed.