George Laurence **MILLER**, Surviving Trustee under Deed of Trust of George Laurence Miller and Mary Campbell Miller dated March 15, 1935,

George Laurence Miller and George Laurence Miller, Jr., Executors of the Estate of Mary Campbell Miller, deceased, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 68–2046.

United States District Court,
E. D. Pennsylvania.

April 8, 1971.

Daniel A. Mungall, Jr., Philadelphia, Pa., for plaintiffs.

Louis C. Bechtle, U. S. Atty., Donald A. Stratland, Donald R. Anderson, John A. Flanagan, Washington, D. C., for defendant.

## OPINION AND ORDER

HIGGINBOTHAM, District Judge.

Plaintiffs sue for the refund of the estate tax and interest paid in a total amount in excess of one million dollars (plus interest on both sums).

Mary Campbell Miller (hereinafter referred to as Decedent) died on or about March 30, 1961. The plaintiffs are the executors of her estate and the surviving trustee under a trust dated March 15, 1935.

On December 15, 1930, George Laurence Miller (hereinafter referred to as Miller), Decedent's husband, was the owner of four hundred (400) shares of common stock of George Miller, Inc. (hereinafter referred to as Corporation). On that date, Miller transferred those shares to himself and Decedent as tenants by the entirety. Decedent, as Miller before her, did not pay for the property.[1]

---

1. After pretrial conferences the parties filed extensive stipulations of fact and depositions. They have agreed that I may decide this case without their presentation of any trial testimony and "that there is no need for an evidentiary hear-

By December 20, 1934, there were accrued and unpaid dividends on the above-mentioned 400 shares of stock in the amount of $79,469.50. On that date, Miller transferred to himself and Decedent $530.50 of indebtedness owed by Corporation to Miller. This indebtedness was then cancelled by the Millers in return for Corporation Bonds with a par value of $80,000.

On March 15, 1935, the Millers created an inter vivos trust in which Miller and Francis Chapman were named as Trustees. On the same date, Miller and Decedent transferred the 400 shares of stock and the $80,000 of bonds of the Corporation to the Trustees of this trust.

Plaintiffs contend that the Government erroneously included in Decedent's gross estate one-half the value of property which the Millers, as tenants by the entirety, transferred to the above-mentioned trust. However, it is my conclusion that one-half the value of the property transferred by the Millers to the Trust created March 15, 1935 was properly included in Decedent's gross estate.

## II. SECTIONS 2036 AND 2040 OF THE INTERNAL REVENUE CODE.

### A. *Introduction*

The critical statutory provision in this case is Section 2036 of the Internal Revenue Code of 1954 (26 U.S.C.), which, in relevant part, reads as follows:

"The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his

ing and that all facts relevant for my consideration have been filed as a matter of

death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property * * *."

The Trust created by the Millers on March 15, 1935 provided (Complaint, Exhibit A, pages 4 and 5):

## "IV. DISTRIBUTION OF INCOME

"Trustees shall make distribution of any income received from the principal of the trust hereby created, payments to be made annually, semi-annually, quarterly or monthly, in their discretion, and shall during the continuance of this trust pay the same to Millers jointly, or to the survivor of them, the receipt of Millers or survivor to be a good and sufficient acquittance for monies so paid."

It is clear that if we read Section 2036 alone, Decedent's gross estate properly included one-half of the value of the property transferred by the Millers to a trust. Such is the case because Decedent was the owner of one-half of the transferred property, and in transferring it, by the terms of the trust, she retained an interest in the income it produced.

### B. *Plaintiffs' Contentions*

Plaintiffs agree that Section 2036 "requires the inclusion in a decedent's gross estate of the value of property to the extent of any interest therein of the decedent which has been transferred in trust with a retained life estate" (Plaintiffs' Brief, page 6). However, Plaintiffs contend that Section 2036 is to be read in conjuncture with Section 2040, which determines the value of the property to be included in an estate.

Section 2040 reads as follows:

### "*Joint Interests*

"The value of the gross estate shall include the value of all property (ex-

record." See documents Nos. 8, 10, 12, and 13.

cept real property situated outside of the United States) to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants."

Plaintiffs support their contentions by several arguments. Plaintiffs fear that the property transferred by the Millers to the trustees of the trust dated March 15, 1935 may " * * * be taxed to the extent of 150% of the value thereof in the estates of Mr. and Mrs. Miller." (Plaintiffs' Brief, page 5). Plaintiffs point to cases like Glaser v. United States, 306 F.2d 57 (7th Cir. 1962) and United States v. Heasty, 370 F.2d 525 (10th Cir. 1966) (both of which will be discussed in detail later), in which the Government took the very position that Plaintiffs now urge. In those cases, the Government sought to include the entire value of the property in question in the estate of a decedent who had initially transferred his own property to himself and his wife jointly, and they later jointly had again transferred (prior to death of the decedent where decedent predeceased his spouse) this property to a trust with a retained life estate. Applying the reasoning used in those cases to our case, after taxing one-half of the value of the property in question in the estate .of the Decedent, upon the death of Miller the Government might seek to tax the entire value of this property in his estate.

Plaintiffs note that in Revenue Ruling 69–577, 1969–2 Cum.Bull. 173, the Government recently changed its position in cases dealing with circumstances such as those found here. This Revenue Ruling was directed to the situation where property is purchased by a husband, held in tenancy by the entirety, and then transferred in trust with a retained life estate. It relied on United States v. Heasty, supra, and held that in such circumstances, where each spouse is entitled (under local property law) to one-half the income from property held in tenancy by the entireties, " * * * only one-half of the value of the trust property is includable in each cotenant's gross estate under Section 2036(a) (1) of the Code." Despite this recent Revenue Ruling, Plaintiffs fear that the Government might once again revert to its earlier position.

A second argument advanced by plaintiffs for reading Sections 2036 and 2040 together is that "the substance and not the form of what transpired here should control * * *" By this, the plaintiffs mean that the transfer of the entireties property to a trust with a retained life estate, bringing into play Section 2036, should not alter the pre-existing effect of Section 2040 on the relative gross estates of the Millers. Plaintiffs note that Miller received the prop-

erty concerned here as a gift from his father. Plaintiffs contend that if either Miller or his wife had died after he transferred the property to himself and his wife as tenants by the entirety but before the transfer to the trust, under Section 2040 the entire value of the jointly held property would have been included in his and none in her estate. Thus, plaintiffs point out that before the transfer to the trust, the property was solely Miller's for Federal estate tax purposes. Plaintiffs contend that while the transfer to the trust brought into play Section 2036 under which the property remained taxable for Federal estate tax purposes, it should not have the effect of transferring one-half of the property to Decedent for Federal estate tax purposes. Also, Plaintiffs note that "since 1916, the Federal Estate tax has had a provision comparable to Section 2040 of the 1954 Code," while the predecessor to Section 2036 was added at a later date " * * * merely to prevent the inter vivos transfer in trust from removing the property from the transferor's estate." (Plaintiffs' Brief, page 8.)

### C. *Government's Contentions*

The Government contends that under Section 2036 alone, one-half of the value of jointly-held property transferred by the Millers to a trust in which Decedent retained the right to a portion of the income is includable in Decedent's gross estate for Federal estate tax purposes. The Government merely relies on the aforementioned terms of both Section 2036 and the trust in question, and cites Revenue Ruling 69–577, Supra. As previously noted, I would agree with the Government's contentions if I were to look to Section 2036 alone.

Insofar as the relationship of Sections 2036 and 2040 is concerned obviously the Government no longer insists that they must be read together. At the same time, nowhere does the Government state the position that the two are never to be read together. The Government merely states that in this case, no reference need be made to Section 2040. The Government further contends that even if Section 2040 were applicable, one-half of the value of the property transferred to the trust would still be includable in Decedent's gross estate. Since Section 2036 alone affords a sufficient basis for my decision in favor of the Government, I need not consider the impact of possible interpretations of Section 2040.

### D. *Precedents*

There are two controlling cases which clearly reject plaintiffs' contention that Section 2036 is to be read in conjuncture with Section 2040. In Glaser v. United States, supra, the decedent husband furnished the consideration for real estate parcels in which he and his wife took title as tenants by the entirety. Thereafter they conveyed the various parcels to their children, "reserving a life estate to themselves and to the survivor of them." Upon decedent's death, the Government sought to include the full value (less the commuted value of the widow's life estate in her one-half interest in each parcel) of the real estate parcels in decedent's gross estate. The Government contended that if the decedent had died before the transfer to the children, the full value of the properties would have been included in his gross estate under Section 2040. The Government further contended that in substance, the husband retained the same interest after the conveyances to his children as he had before, so that Sections 2036 and 2040 should be read together to include the entire value of the property in the decedent's gross estate. However, the Court of Appeals for the 7th Circuit at 306 F. 2d p. 60 held " * * * that since the properties had been transferred before decedent's death, Section 2040 has no application. Under this section it is only 'the value of property held jointly *at the time* of decedent's death' that is includable. (Emphasis supplied). Treas.Reg., Section 20.2040–1." The conveyances to their children destroyed the tenancies by the entireties, so that at the time of decedent's death there existed no joint interest to which Section 2040 could apply. The Court concluded that because dece-

dent and his wife had taken title to the properties as tenants by the entirety, he had only conveyed a half interest to his children so that Section 2036 only applied to this half interest (the Court noted that the full value of such properties would be included if the decedent had been the full owner of the property at the time of the transfer to the children).

A similar conclusion was reached in United States v. Heasty, supra. In that case, the decedent-husband supplied the entire consideration for several tracts of land and later conveyed them through a "strawman" to himself and his wife as joint tenants with right of survivorship. Two years later, they conveyed the properties to their daughters and grandchildren, reserving to themselves joint estates with rights of survivorship. Upon decedent's death, the Government sought to tax the full value of the properties in his gross estate. The Government contended that if decedent had died before the transfer to his children and grandchildren, the full value of the property would have been includable in his estate by Section 2040. Therefore, the Government contended that Section 2036 could only be applied in conjuncture with Section 2040. The Court, citing Glaser v. United States, supra, agreed "with the conclusion of the Seventh Circuit Court that section 2040 has no application to a case like this because after the husband and wife took the property as joint tenants there was another transfer of the property."

As already noted, following these decisions, the Government reversed its above quoted position by Revenue Ruling 69–577, supra, and by its position in the present case.

### E. *Conclusion*

█ As stated previously, reference solely to Section 2036 causes me to conclude that one-half of the value of the property transferred by the Millers to the trust dated March 15, 1935, was properly included in Decedent's gross es-

tate. This conclusion is unaltered by the existence of Section 2040, which is inapplicable despite plaintiff's vigorous assertions to the contrary.

The plaintiffs' first argument in favor of reading Section 2036 in conjuncture with Section 2040 concerns the dangers of a total tax of 150% of the value of the property transferred to the trust. This argument is clearly without merit, for I am presently unconcerned with how Miller's gross estate will be calculated upon his death; I am only concerned with the gross estate of this Decedent—Miller's wife. Plaintiffs introduce their "Argument" with the statement (on page 5 of Plaintiffs' Brief) that "Plaintiffs have brought this action, not so much in the expectation of being able to convince the Court of the correctness of their position, but rather to insure, to the extent possible, that the property which Mr. and Mrs. Miller transferred to the trustees of the trust dated March 15, 1935, will not be taxed to the extent of 150% of the value thereof in the estates of Mr. and Mrs. Miller." Insofar as plaintiff's request concerns the future calculation of Miller's gross estate, I agree with the Government (Government's brief, page 10) "* * * that this request for an advisory opinion by the Court need not be honored to decide this matter, nor would it be proper for the Court to go beyond the issue before it." And even if I were concerned with the supposed impropriety of taxing certain property at a total of 150% of its value as between two different estates, according to Revenue Ruling 69–577, Supra, there is apparently no longer any such danger. Plaintiff's fears will only prove to have been well founded if the Government again changes its position; and the effect of such an unlikely circumstance is clearly beyond the scope of my inquiry. Finally, I must note that there is nothing inherently wrong in taxing 150% of the value of a certain property as between two estates. Such is the norm where one spouse dies leaving a certain property to the other spouse, and the other

spouse later dies unmarried leaving the same property in his estate.

Plaintiff's second argument in favor of reading Section 2036 in conjuncture with Section 2040 is that the transfer of the entireties property to a trust with a retained life estate, bringing into play Section 2036, should not alter the pre-existing effect of Section 2040 on the relative gross estates of the Millers. Plaintiffs contend that Section 2036 was never intended to negate the effect of Section 2040. But Plaintiffs overlook the importance of the following introductory language used in Section 2040 relating to its applicability: "The value of the gross estate shall include the value of all property * * * to the extent of the interest therein held as * * * tenants by the entirety by the decedent and spouse * * *." This language was interpreted in Glaser v. United States, supra, to mean that it is only the value of property *held jointly at the time of decedent's death* that is includable. Here, as in both *Glaser* and *Heasty*, the transfer of the entirety property to a trust destroyed the tenancy by the entirety for purposes of Section 2040, so that at the time of Decedent's death there existed no joint interest to which Section 2040 could apply. The substantial similarity of the circumstances is unaltered by the fact that the wife died before the husband in our case.

Thus, I read Section 2036 alone in this case, and as previously noted, *it is* sufficient to justify the Government's inclusion of one-half of the value of the property transferred to the trust of March 15, 1935, in Decedent's gross estate.

### III. SECTION 2038 OF THE INTERNAL REVENUE CODE.

The Government also attempts to justify the inclusion in Decedent's estate of one-half of the value of the property transferred by the Millers to the trust created March 15, 1935, by reference to Section 2038 of the Internal Revenue Code of 1954, which provides, in relevant part, as follows:

"The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * to alter, amend, revoke, or terminate * * *."

The trust created by the Millers on March 15, 1935, provided, in relevant part, as follows: (Complaint, Exhibit A) (page 2) "I. DUTIES AND POWERS OF TRUSTEES.

\* \* \* \* \* \*

"(b) Trustees shall have complete and absolute control over all property forming the principal of the trust estate, * * * to the same extent as if the same were their own individual property. * * *

\* \* \* \* \* \*

(page 4) "III. RESIGNATION AND REMOVAL OF TRUSTEES.

In the event of the removal, resignation or inability to act of either or both of the Trustees, a successor or successors shall be appointed in his or their place and stead by Millers or the survivor of them. Trustees so appointed shall have all the powers and shall be subject to all the terms and conditions with respect to an original Trustee.

\* \* \* \* \* \*

(page 5) "VI. TERMINATION OF TRUST.

This trust shall be irrevocable as to the parties hereto and the survivor of them, and shall continue in full force and effect until the death of the survivor of Millers."

The issue presented is whether the enjoyment of the property transferred to the trust in question was subject, at the date of Decedent's death, to any change through the exercise of a power to alter, amend, revoke, or terminate. I conclude that the enjoyment of the property in trust was not subject to any such power.

The Government contends (page 9, Government's Brief) " * * * that the power on the part of the Millers to appoint themselves trustees [Millers exercised the power, Strip., par. 5], with the right to treat the property in the trust as if it were their own, constitutes a power to alter or amend within the meaning of Section 2038." The Government goes on to cite language of the Supreme Court to the effect that " * * * a donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of the degree of control necessary to avoid the estate tax. See: Commissioner [of Internal Revenue] v. Estate of Holmes, 326 U.S. 480, 487 [66 S. Ct. 257, 90 L.Ed. 228] (1946). See also, Lober v. United States, 346 U.S. 335 [74 S.Ct. 98, 98 L.Ed. 15] (1953); Walter v. United States, 341 F.2d 182 (C.A. 6, 1965) * * *."

Plaintiffs admit that the language used in Section I(b) of the trust instrument is broad. However, plaintiffs are correct in contending that this " * * * broadness relates to the powers of the trustees to deal with the property in their capacities as trustees and not with who shall enjoy the property", for clauses in the trust instrument dealing with distribution of income and principal are not impaired by Section I(b). The trust in question is clearly irrevocable, as pointed out in Section VI of the trust instrument and as noted by the Pennsylvania Supreme Court in In Re Miller, 351 Pa. 144, 40 A.2d 484 (1945). Plaintiffs point out an important distinction between the three cases cited by the Government and this case, for all three held that Section 2038 is applicable where a donor may have the power to accelerate distribution of the principal of a trust to the beneficiaries. While the Millers retained broad powers to deal with the trust property as trustees, they never retained any control over the timing of distributions of income or principal. Thus, the decedent retained no power to alter, amend, revoke or terminate enjoyment of this trust property, so that reference to Section 2038 will not serve as an alternate ground for finding in favor of the Government.